IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>    vs.<br><br>$187,891 IN UNITED STATES CURRENCY,<br><br>                    Defendant. | Civil No. 8:22CV233<br><br>**COMPLAINT FOR FORFEITURE *IN REM*** |

The United States of America, for its cause of action against the defendant property, pursuant to Rule G(2) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, states and alleges as follows:

### Nature of the Action

1. This is an action to forfeit property to the United States for violations of 21 U.S.C. § 881.

### The Defendant *in rem*

2. Defendant property is $187,891 U.S. currency seized by law enforcement from the Audi operated owned by Michael Sasgen during a traffic stop on westbound Interstate 80 near mile marker 373 on August 21, 2021. One passenger was Michael Nyre.

3. The U.S. Customs and Border Protection (CBP) currently has custody of the defendant property.

### Jurisdiction and Venue

4. This Court has subject matter jurisdiction for an action commenced by the United States pursuant to 28 U.S.C. § 1345, and for an action for forfeiture pursuant to 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action pursuant to 21 U.S.C. § 881.

5. This Court has *in rem* jurisdiction over the defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

## Basis for the Forfeiture

7. Defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act.

## Facts

8. On February 1, 2022, Lancaster County Sheriff's Officer John Hudec stopped an Audi Q7 SUV for having an obstructed license plate and following another vehicle too closely on westbound Interstate 80 near Lincoln, Nebraska. After approaching the vehicle, Officer Hudec identified the driver as Michael Sasgen and the front-seat passenger as Michael Nyre. While Mr. Sasgen was accessing his insurance information on his smart phone, Officer Hudec noticed that there were two backpacks in the back seat of the vehicle and that there was a wrapped box on the floor. Officer Hudec could also see into the cargo area of the SUV, and it only contained one small suitcase. Officer Hudec thought this was odd because, even though the vehicle's license plate was partially obscured by the license plate holder, and he did not know their destination, Officer Hudec could tell the vehicle was from out of state, and it seemed like they were traveling very

2

lightly for a long road trip. From training and experience, Officer Hudec believed the partially obstructed license plate to be from Illinois.

9. Officer Hudec allowed Mr. Sasgen to sit in the front passenger seat of his cruiser while he processed the traffic stop. Mr. Sasgen did not present his actual driver's license, but rather a paper copy of it, therefore Officer Hudec could not simply scan the license, but instead had to manually enter all the information into the computer in his cruiser by hand. Officer Hudec asked Mr. Sasgen where they were headed, and Mr. Sasgen told Officer Hudec that they were headed to Denver to go skiing for a couple of days. At that point, Officer Hudec became more suspicious about the lack of luggage because the single, small suitcase he observed in the vehicle seemed like an insufficient amount of luggage for two adult males on a cross-country, multi-day ski trip. Officer Hudec continued to make conversation with Mr. Sasgen regarding his occupation and the purpose of his travels. Mr. Sasgen answered that he was involved in "horticulture" as a consultant, which, through Officer Hudec's experience, was a red flag, possibly indicating that Mr. Sasgen was involved in the cultivation of marijuana. Officer Hudec also noticed that Mr. Sasgen appeared nervous and was unwilling to elaborate on certain issues including his specific travel plans and details of his current employment. During the conversation, Mr. Sasgen revealed that they had not yet purchased any lift tickets and that they had not made any specific reservations for their trip. Officer Hudec thought it was odd that the two men would take such a trip from Illinois to go skiing without even having a way to get on the slopes or even a definite destination in mind. Mr. Sasgen also suggested that they intended to meet up with friends in Denver and might go to "Hot Springs." There

does not appear to be a town in Colorado named "Hot Springs." There is, however, a place called "Hot Sulphur Springs."

10. Officer Hudec momentarily left Mr. Sasgen to check the VIN on the Audi SUV. As he approached the vehicle, he observed Mr. Nyre on his cell phone looking at pictures of what appeared to be a marijuana grow operation. Officer Hudec then asked Mr. Nyre about their trip, and Mr. Nyre answered that they were headed to Denver. Mr. Nyre said he had a friend in Denver and that they were thinking of going to "Hot Springs." Officer Hudec thought the specificity of this detail sounded as though it had been rehearsed, but he also noted that Mr. Nyre made no mention of skiing. It also appeared that Mr. Nyre was trying to avoid conversing with Officer Hudec at any length by continually eating pretzels and sipping water. Officer Hudec asked Mr. Nyre whether there was anything illegal in the vehicle. Mr. Nyre indicated that there was not anything illegal in the vehicle but added that the vehicle does not belong to him. Officer Hudec asked if there was a large amount of U.S. currency in the vehicle, and Mr. Nyre said that there was not. Officer Hudec then asked Mr. Nyre specifically what was in the box on the floor of the back seat. Mr. Nyre half-turned to look in the back seat and then answered that he did not know what was in the box. During the entire line of questioning, Mr. Nyre appeared nervous and continued to eat pretzels and drink water. Officer Hudec asked if anything in the vehicle belonged to Mr. Nyre. Mr. Nyre answered that he owned one of the backpacks and that it was all he brought along for his trip.

11. Later review of video footage recorded during the traffic stop captured Mr. Sasgen and Mr. Nyre, when they thought they were out of earshot of the officers, assuring each other that they had both told Officer Hudec the same story about visiting friends in Colorado.

12. When Officer Hudec returned to Mr. Sasgen, he asked Mr. Sasgen whether he had ever been cited or arrested for a crime. Mr. Sasgen answered that he had not; Officer Hudec's system checks determined that Mr. Sasgen had two prior citations for manufacturing and delivering cannabis, as well as arrests for driving under the influence, possession of alcohol, and failure to appear in court.

13. Officer Hudec issued a written warning to Mr. Sasgen regarding the obstructed license plate and returned Sasgen's temporary driver's license. Officer Hudec then told Mr. Sasgen that he was "good to go" and told him to have a safe drive the rest of his trip. Officer Hudec also shook Mr. Sasgen's hand and noticed that his hand was very wet and clammy. Officer Hudec asked if Mr. Sasgen would be willing to answer a few additional questions before he got on his way, and, instead of departing, Mr. Sasgen stayed seated in the patrol unit and continued to converse with Officer Hudec. Mr. Sasgen stated that there was nothing illegal in the vehicle. Officer Hudec then asked specifically if there were any weapons or drugs in the vehicle, and Mr. Sasgen indicated that there were not. Officer Hudec asked about the wrapped box in the back of the vehicle, and Mr. Sasgen said it was a present for his friend, "Charlie." Officer Hudec asked if there were large amounts of U.S. currency in the vehicle, and Mr. Sasgen said, "no." Officer Hudec asked if he could search the car, and, after some hesitation, Mr. Sasgen said, "no." Officer Hudec then asked if Deputy Henkel, who had arrived after Officer Hudec called him to

the scene, could bring out his canine to perform a sniff of the vehicle. Mr. Sasgen, who was continuing to show visible signs associated with extreme nervousness, said no, he wanted to get on his way.

14. While Officer Hudec turned his attention to Mr. Nyre, Deputy Henkel explained to Mr. Sasgen that he intended to allow his canine to conduct an exterior sniff of the vehicle and asked whether there were any personal-use-type quantities of controlled substances he should know about before conducting the canine sniff. Mr. Sasgen told Deputy Henkel that he had a marijuana grinder in the center console of the vehicle. Both Mr. Sasgen and Mr. Nyre denied that there was any personal use marijuana in the vehicle.

15. The officers moved Mr. Sasgen and Mr. Nyre to the rear seat of Officer Hudec's vehicle for safety while they confirmed that the marijuana grinder was present in the vehicle's front console. In addition to the grinder, they discovered several THC pens, some rubber bands, loose currency, some marijuana, and a cell phone in the center console. After finding the marijuana in the console without the aid of a canine, the officers proceeded to search the rest of the vehicle. They opened the wrapped "present" and found bundled currency inside. The officers also opened a black backpack belonging to Mr. Sasgen, which contained additional bundled U.S. currency, raw marijuana, THC gummies, and what the officer believed to be psilocybin mushroom edibles. The officers pretested the currency roadside, and it was positive for THC. The officers also located two rolls of packing tape and an odor eliminator in the vehicle.

16. Mr. Nyre signed an abandonment form for the currency in the vehicle, but Mr. Sasgen declined to do so. Officer Hudec released Mr. Sasgen and Mr. Nyre at Lincoln Airport,

in Lincoln, Nebraska, but the officers seized Sasgen's vehicle, the cell phones, and controlled substances inside the vehicle, and the currency. The currency was later counted at West Gate Bank and found to total $187,891.00.

17. The officers noted that the currency had a strong odor of raw marijuana. The total weight of seized marijuana was 32.15 grams, and the total weight of seized suspected psilocybin was 4 grams, a sample of which was submitted to the state lab for analysis.

## Claim for Relief

WHEREFORE the United States of America prays the defendant property be proceeded against for forfeiture in accordance with the laws, regulations and rules of this Court; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the defendant property be condemned, as forfeited, to the United States of America and disposed of according to law and regulations; that the costs of this action be assessed against the defendant property; and for such other and further relief as this Court may deem just and equitable.

UNITED STATES OF AMERICA,
Plaintiff

STEVEN A. RUSSELL
Acting United States Attorney

By: s/ Kimberly C. Bunjer
KIMBERLY C. BUNJER, #20962
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, NE 68102-1506
Tel: (402) 661-3700
Fax: (402) 345-5724
E-mail: kim.bunjer@usdoj.gov

## VERIFICATION

I, Kelly Bennett, hereby verify and declare under penalty of perjury that I am a Special Agent Homeland Security Investigations (HSI) that I have read the foregoing Verified Complaint *in Rem* and know the contents thereof, and that the factual matters contained in paragraphs 8 through 17 of the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent with Homeland Security Investigations (HSI).

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: June 27, 2022.

Kelly Bennett
Special Agent
Homeland Security Investigations (HSI)